(76 Misc. Rep. 21.)

### HOYT v. STEERS et al.

(Supreme Court, Special Term, New York County. March, 1912.)

Municipal Corporations (§ 993*)—Taxpayer's Action—Cancellation of Contract.

    Where a taxpayer sued to restrain the city of New York from concontracting with architects to prepare plans for a public building, it appearing on motion for a preliminary injunction that the real purpose of the action was to compel the city to approve an oral contract with other architects, made several years before by a president of the borough of Brooklyn, which contract was specifically disapproved by the corporation counsel, and the employment thereunder was only to furnish preliminary drawings, the motion will be denied.

    [Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 2158–2161; Dec. Dig. § 993.*]

Action by John Sherman Hoyt against Alfred E. Steers and others. Motion for preliminary injunction denied.

Phillips, Mahoney & Wagner, for the motion.

Archibald R. Watson, Corp. Counsel (Francis Martin and William H. Kehoe, of counsel), opposed.

GERARD, J. This is a motion for an order granting an injunction pendente lite to restrain the board of estimate and apportionment and the president of the borough of Brooklyn from entering into a con-

tract with the firm of architects known as McKenzie, Voorhees & Gmelin in preparing plans and specifications for a proposed new municipal building in the borough of Brooklyn. The plaintiff, an alleged taxpayer, brings the action under sections 51 and 59 of the General Municipal Law (Consol. Laws 1909, c. 24), the alleged purpose of the action being to prevent waste and to prevent an illegal act through which waste will result. The real purpose of the action is to compel the city to approve an alleged oral contract made in 1907 by former President Coler of the borough of Brooklyn with the firm of architects known as Lord & Hewlett.

(1) Section 383 of the Greater New York Charter (Laws 1901, c. 466) provides that the borough president shall construct public buildings in his borough, and one of his duties is "to prepare all contracts relative to his borough, subject to approval as to form by the corporation counsel." Plaintiff admits that this was an oral contract. The contract was specifically disapproved by the corporation counsel.

(2) The papers allege that the contract with Lord & Hewlett was to prepare plans and specifications for a $3,300,000 building. No authority was ever given by either the board of aldermen or the board of estimate and apportionment to Borough President Coler to erect any such building. The only thing that the board of estimate did was to authorize an issue of corporate stock to the amount of $500,000 for the erection of a municipal building in Brooklyn.

(3) The exhibits conclusively show that Lord & Hewlett were only employed to furnish preliminary drawings, for which they were to receive $10,000. They could not be employed by oral contract to construct at a compensation of 5 per cent. a $3,300,000 building. The authority to erect such a building had never been granted by the city.

(4) This claim of Lord & Hewlett is without doubt the result of an afterthought. They have endeavored in every way possible to secure the contract for the building now contemplated to be constructed and which they are now endeavoring to enjoin. These efforts continued down to August, 1911. On August 18, 1911, they wrote Borough President Steers as follows:

"So far as we are concerned, the situation is as follows: We entered into a contract with your predecessor to *prepare preliminary studies suitable for submission to the art commission for $10,000.00.*"

All the correspondence undoubtedly shows that Lord & Hewlett were employed, if employed legally, at all, not for the architectural work of an authorized $3,300,000 building, but only to prepare preliminary plans at a $10,000 compensation.

Motion denied, with costs.